The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you and good morning. First call 4-23-0341, N. Ray K.A., a minor, People of the State of Illinois Appellee versus K.A. Appellant. Counsel for the appellant, would you please state your name for the record? Sarah Lucy for the appellant, Your Honor. Thank you, and counsel for the appellee? May it please the court, I have two quick concessions in the interest of judicial economy. One, I've said the defendant confessed three times, he did not. He confessed twice. He did not confess to his grandmother. The other concession I would like to make is the respondent did not have to file a post-trial motion to preserve his arguments. Thank you. And you're James Majors? Yes, sir. Very good. Thank you for that. Counsel, you may proceed. Good morning and may it please the court. My name is Sarah Lucy from the Office of the State Appellate Defender and I represent the appellant, K.A., the minor in this case. There's no way to talk about this case without acknowledging that this is a horrible tragedy. Five people died in this fire, including three very small children. It is difficult for the family, for the community, for the courts to deal with. But that tragedy was compounded when the state decided to charge a nine-year-old second grader with these murders. And worse yet, the state did so without proof that the fire had been started intentionally, or even if it had, who started that fire. In this case, the fire investigator, Michael Powell, did not enter the trailer except for very briefly the next day. He testified that he fell through the floor and decided it would be safer if he conducted the entirety of his investigation from the outside of the trailer looking inside. The entirety of that investigation did not involve any scientific testing whatsoever, including grid mapping, which I think would have been the most helpful in this case, and that comes from the opinion of the defense expert, Terry Brown, who testified that grid mapping would be where you sort through the debris that have fallen through the floor, where you believe that the fire would have began, to see what sort of either incendiary sources there might have been or non-incendiary sources. Michael Powell only had to go off of Katrina's word that there had been nothing plugged in around the couch or in the living room where Powell believed that the fire began, such as a space heater or a candle. Obviously, that's not plugged in, but, you know, something incendiary, something that would accidentally start a fire. There's simply no proof that that statement is true necessarily. After all, Katrina was not the only adult who lived in that trailer. Jason could have plugged in something while Katrina was somewhere else. Kathy could have plugged something in. One of the children could have brought something in. There's just no way of knowing because there was no grid mapping. In Powell's view, it was too costly, which again, when we're talking about the deaths of five people, is a pretty brutal thing to hear. There was similarly no arc mapping, no depth of char, which would have confirmed whether or not the fire actually started in the living room. That's interesting. You are referring to the expert testimony, but if I understand correctly, you argue that this case turns on the credibility of respondents, family members who testified, don't you? Indeed, your honor. In addition to the lack of evidence from the fire investigator saying that there was an incendiary fire, we also don't have any proof that K.A. was the person who started the fire. If I can draw this court's attention to exhibit 60 and 61 in the record, you'll see that is a picture from the outside of the trailer looking in towards the great grandmother's house. You'll see in the bottom panel, there is no screen and no window. You can tell because things are coming out. It appears from image 61 that the screen window that would have been there has been removed towards the inside and placed to the side. That is consistent with K.A.'s statements to the next day to Detective Kilson. It is consistent with Katrina's initial statements to the authorities that K.A. was inside of his great grandmother's bedroom watching a movie with her. He crawled out of the window and that is when Katrina instructed him to go to his grandparents' house to report the fire, which he then- These are questions and issues for the trial court as prior fact to determine regarding the credibility of these witnesses. To that, I would have to go to the Supreme Court in 2008 when it said merely because a prior fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision. I have to say that in this case, it is one of those situations where the court's ultimate finding simply does not rise to the level of a reasonable decision here. Let me ask you about that. We have the trial court and this court a few years ago made a point of noting that the single important thing the trial court could do concerning a prior fact is to tell the reviewing court whom it believes and whom it doesn't believe. The trial court did that in this case and made these explicit findings that I want to ask you about. Explicitly found that Samantha and Katrina's testimony that responded admitted to starting the fire was credible. Two, it found Katrina's original story regarding how the fire started was not credible. Three, it found Poll's opinion of the fire's origin was credible. Four, it found Katrina's trial testimony regarding what occurred the night of the fire was credible. And five, respondents' denials were not credible. Given the cold record now before us and given the careful findings of the trial court, on what basis are you arguing we should reject these findings? Your Honor, I do apologize. I missed number four. Number four was Katrina's trial testimony regarding what occurred the night of the fire was credible. Your Honor, I will try to take those in order. However, just to number four really quickly, I don't know that the court did actually find her testimony overly credible. The court, if you go through the decision, examined the other fire evidence, the other crimes evidence that was included, Michael Powell's testimony. Then he goes to the fact that the furnace was not the cause of the fire, and I believe that goes to number two, which was the fact that Katrina's test or statements on the night of that the furnace was the problem is incorrect. And then it goes to the fact that K.A. was the only one who was not nude on that day. Therefore, it was unlikely that Katrina set the fire. I think a lot of it goes back to my initial point of this all presumes that the fire was incendiary in nature. Powell was basing that finding off of what he had been told by Detective Gilson, which was incorrect information. Powell testified that Gilson told him that K.A. had an accelerant. There was no accelerant found on the scene. There were testing. There was testing done on the floor. However, that came back negative. K.A. did not actually say that he had an accelerant. That was sort of a miscommunication. Or perhaps more likely, the discharge hearing took place three and a half years after these statements had been made. It's entirely reasonable. So aren't you simply asking us to reassess all this evidence, try to view it in the most favorable light to the defendant, and asking us to disregard what the trial court said? That's not our role, is it? That's not what I'm asking this court to do at all when there's absolutely no evidence here that the trial court reasonably based its decision upon. This case is very akin to people v. Giuliotta, where there was no evidence of an incendiary source for the fire, no proof of an accelerant, nobody saw the defendant actually start the fire or do any or say anything that indicated that they started the fire. There's simply no evidence here. What this ultimately came down to was other crimes evidence. Counselor, if I may interrupt you for just a moment, going back to this issue, as has been acknowledged, that this case turns on credibility. Going back to this point, viewing the evidence most favorable to the prosecution, couldn't a rational trier of fact have concluded, as the trial court did, that the fire started intentionally in the living room and that the respondent had confessed to Samantha and Katrina? Your Honor, I just don't believe that that is a reasonable decision based on the entirety of the evidence that was presented to the court. Again, going to the lack of any physical evidence that this was an incendiary fire and to speak to the confessions. First of all, the confession to Samantha, the very first time that that is ever stated, is during the discharge hearing. Again, three and a half to four years after the actual events. After Samantha admitted to Samantha, that she suffered from several strokes and seizures and had a very difficult time recollecting even minor details when asked to do so on the stand. On the night of the fire, when asked by the police to recount her story, she said absolutely nothing about Kyle coming up to her door and saying, I'm sorry, I didn't mean to do it. Her testimony at the discharge hearing is not that he fully confessed. That's all he said. I'm sorry, I didn't mean to do it. That could be, I didn't mean to leave my great-grandmother alone in a bedroom. That could mean, you know, I didn't mean to be the only person who managed to get out of the fire without saving my siblings. Samantha didn't follow up. And then we have Katrina's supposed confession. So the timeline here is that juvenile proceedings began against Katrina for neglect in April, when the fire started. She continued to have visitation with her son, but in July of 2019, several months later, she went off on her son, screaming at him that he had started the fire, that he had to confess. And that is when DCFS decided that she was no longer allowed to have supervised visitation with her child. And from that point on, there had to be a DCFS moderator in the room specifically for the purpose of making sure that she did not speak to her son about the fire. And yet she would have us believe that in October of 2019, she manages to hold up a blue folding mirror. I'm sorry the camera won't capture my paper because of the background. But you know, in essentially hiding her face and Kyle's face from the DCFS monitor, the monitor doesn't realize that anything is amiss. She asks him about this fire and he says, I didn't mean to do it. I prayed to God that everyone would be all right, but God let me down. Your Honor, there are believable. Is that what you're arguing to us? It's not believable. It's strange credulity, especially given Katrina's history of lying that was presented. We should not respect the trial judge's determination that he believed it. I think that this court has an obligation to look at the actual evidence that was presented at trial. What about that specific fact? On the specific fact of the extrajudicial confession? Yes. I believe that was the court entitled to believe her. I believe that that court's decision, if that is what the court based its decision on, it did not say so specifically in the record. And I would have to point out the state specifically on the record why it believes certain witnesses. I think that in this case, the fact that the evidence was so unsubstantial, the extrajudicial confession, so incredible and extrajudicial confessions have been frowned upon by our that courts have a historical mistrust. You haven't answered my question that I began with. Was the trial judge entitled to believe Katrina? In this case, based on the entirety of the record that is before this court, no. In this specific situation, and that is not to say that in general that the credibility, I understand that that is the law. However, in this case, given the entirety of the record, given Katrina's statements to defense counsel saying, what are you trying to do here? Get my son off. He needs to go to jail. Given, again, just the incredible amount of discrepancies, of lies, of changing her testimony, of downplaying certain things. For instance, Samantha, in Katrina's deposition, she calls Samantha bipolar and schizophrenic, says she started at least seven intentional fires. She's a fire bug. We argued that night. She threatened to put me in the hospital. And then on the stand, again, under oath, these are two under oath statements. Katrina says, oh, that's how we joke. It's a joke because she put me in the hospital once before by beating me up. We didn't have an argument. We had a conversation. Again, this is not saying that in every case that will be the outcome, that in every case this court should sit in judgment and reevaluate what the trial court said. It's that in this case, the evidence is so incredible and the evidence is so insufficient to prove that K.A. started the fire when there is absolutely nothing that indicates that he did so except for this other crimes propensity evidence and the supposed extrajudicial or outside of the court statement that he made to his mother. Counselor, I have another question. You made brief reference a moment ago to other crimes evidence being improperly admitted. Isn't it correct that defense counsel in his closing argument asserted that the state did not present evidence that respondent knew what could occur if he started a fire in the trailer? Yes, Your Honor. Unfortunately, I cannot walk that statement backwards. Well, then isn't then the testimony about the other crimes, the other fires, wasn't that clearly admissible to show respondents knowledge and absence of mistake to rebut the very argument that defense counsel made in this case? Even if it were, Your Honor, because I do understand there is one statement taken just by itself that would indicate absence of mistake. And I'll simply say that in closing arguments, this court often admonishes that we look at the statements as a whole. And I would say that defense counsel's general defense was that there is no evidence that K.A. started the fire. But I acknowledge the statement. And what I would say to that is this did not come down to a mini trial on the other crimes evidence. This became the trial. And I'm not doing a page comparison of, well, 50 pages of this and 30 pages of that. I mean, actually, if you look at what everyone testified to, why each witness was called. Was your argument not that it was inadmissible, but that too much was admitted? It's very much both, Your Honor. First, it is inadmissible, again, aside from one very brief statement from defense counsel in closing argument. The overwhelming overarching theme of the case is not that K.A. started the fire accidentally or didn't intend to. It was very simply that he did not start the fire and that the state did not prove or offer any evidence that he did. Even if this court were to find that that's not so, it would still be reasonable to exclude this evidence because clearly the state used it. I'm sorry, clearly the court did use it as propensity evidence at the end of the day. That is just criterion isn't would it be reasonable to exclude it? The criterion would is would all reasonable persons presented with this question like the trial judge have excluded. Isn't that the question? For the court's discretion? It is reviewed for abuse of discretion. But again, not that this is going to be the case in every in every case that appears in front of this court. It is simply that it is the case here that the court did abuse that discretion where Michael, Lori, Samantha, Katrina testified to the exact same facts, the exact same fires, pointing the finger at K.A. in those cases, but not having any evidence to shed light on the facts of what K.A. did that night to make them believe that he started that fire. It's not a question of who started the Carlock fire, the Peoria fire, anything else. The question is who started the fire that night and that's not what the evidence in this case was about. And again, while the the trial court, especially when sitting as the fact finder, is presumed to only consider relevant evidence, that's belied when we when we look at the court's opinion in this case and we see that he spent, I believe, the first two or three pages simply going over that, you know, all of the family members testified about this other crimes evidence. They're clearly afraid of his propensity to start fires. Other statements like, yes, they're clearly scared of him as his propensity to do something. It shows not only that the court considered this myriad of other crimes evidence, spending more time on the other crimes evidence than really it did on the fire itself, but also showing that the I believe the state wanted it to be introduced as. Your honor, for all of these reasons, this court should reverse the trial court's finding of not not guilty. And if this court disagrees with that, should instead remand for a new discharge hearing with other crimes evidence and hearsay evidence excluded. Thank you, counsel. You have time and rebuttal. Mr. Majors. May it please the court, counsel. I've said this many times before. I don't know if I originated or or I stole it from somebody else. But when I sit in this chair, I'm looking at 150 years of experience for three justices. I assume 50 or one third is trial lawyers, one third is trial judges and one third as appellate justices. So, you know what happens in a bench trial. And the judge was a seasoned trial judge. He was in the best position to determine the credibility of the witnesses. You know more about that than I do. And he made his decision. He found these people to be credible. All we have here now is the dry record. We don't have the advantage that the trial judge had. And he found Katrina to be credible and Samantha to be credible and Michael Allwood, excuse me, Allwood to be credible. And that seems to be the gist of respondents argument. So, I don't see any reason to reverse what the trial judge found to be credible. As to this other crimes, I would ask if I've made an argument at they invited air as to the interview. And I think at one point, the trial judge turned to defense counsel and said, what do you want to do on this? And he says, in the interest of judicial economy, we have no objection. Well, to me, that means defense counsel doesn't have a problem with the interview. And during the interview, the defendant or excuse me, the respondent denied setting the fire, but he also admitted starting fires on other occasions. So, if that evidence was allowed in by defense counsel, I don't know what their complaint is. They make a argument that the state's expert did not prove that there was arson. Well, you can find portions of the record that might be interpreted to say that. But at 790, he clearly says that there was a change in the fire manual. And in his opinion, it was an incendiary fire. And the state's attorney did a masterful job of cross-examining their expert Brown. And he revolved around this couch. Questions? Counsel, as it relates to the trial court's statement that hearsay is not an appropriate objection of the discharge hearing, do you concede that that's an erroneous statement? Yes. Yes, Your Honor. But again, we have an experienced trial judge, who I think could filter out the hearsay from direct evidence and weigh it accordingly. There's no jury here to be confused or taken away or misled. It's a seasoned trial judge. Any other questions? There are none. Ms. Lucy, you have five minutes in rebuttal. Thank you, Your Honor. Just a few points to the state's invited error argument. I believe that is to the Miranda argument that I made. That's my third argument. In that case, the state actually preserved the objection. It said that it was stipulating to the admission of People's Exhibit One, which the court had already considered in February, subject to any objections that were agreed to that stipulation. To say that that was then a waiver of anything, I believe that that's an incorrect assessment when the state specifically brought up that it was subject to the same objections. Then the fact that KA denied starting the trailer fire but then admitted to starting other fires, again, I believe that that goes to both my first and second arguments. First, that there is no evidence. If KA did not confess during a 50-minute interview with a seasoned detective who used every cajoling, where you're not going to be in any trouble, I understand the KA still said, I didn't start that fire. I know everyone thinks I did, but I did not do it. Again, leads to the conclusion that this then confession in October to his mother Katrina would be not something that the court should have found credible, especially because the court had in evidence before it, the report for the fitness evaluation that KA received saying that he has limited autonomy from authority. If I may, though, going back to the point you were just making, if even arguably it was improper to admit the statement, then based on what you're saying is the denial, the respondent denied that after being interviewed, then if there is an error, why wouldn't that be a harmless error? I believe it's not a harmless error because of the way that the state then used those statements. After all, it formed the basis of Michael Powell saying that there was some sort of an accelerant used because KA said something about the old neighbors leaving behind a jar of liquid and also the fact that he stated that he had played with fire that day. He admitted to starting the previous fires. When that became the crux and the real issue at trial, his own statements that he had previously set fires really lent credibility to the family statements that the trial court then very much put its credence into when determining KA's guilt because of the lack of evidence of this actual fire. I would also point out that it is very clear from the court's findings that the court did in fact consider the hearsay evidence, while the state once again repeats the point that a trial court is presumed to only consider the correct I am going to consider the Peoria fire, despite the fact that that hearsay came in in four parts. That is to say, KA supposedly told Charlie, who told her mother, who told the fire investigator Joshua Harris, who then repeated the statement on the stand and because there was no objection, because the court had already made it clear that an objection for hearsay would not be allowed, there's no reason that the state explained why it thought that four layers of hearsay was an acceptable method of introducing evidence. Certainly, even if it were for the investigative procedure exception, that is not allowed to be used for the truth of the matter asserted and such statements should be limited and very narrowly tailored to what is strictly necessary. So, here what we have is Joshua Harris just repeating everything that anyone said, the court then using it for the truth of the matter asserted and then using it as propensity evidence against KA. So, even if this court doesn't believe that the reasonable doubt argument merits an acquittal, the extensive evidentiary errors that happened in this case at very, very least demand a new discharge hearing. Thank you. Thank you, counsel. The court will take this matter under advisement and we now stand at recess.